UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICKY C.L. BRADBURY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12-CV-575 (CEJ) |
| ) | |
| NETWORK ENTERPRISES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion to dismiss Counts II, III, IV, and V of the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff opposes the motion, and the issues are fully briefed.

**I. Background**

In 2010, plaintiff Ricky Bradbury was hired as Vice President of defendant Network Enterprises, Inc. (formerly, Network Piping).[1] The employment agreement between Network and plaintiff contained a "Shadow Stock" provision, stating that plaintiff would receive 5% of Network's value in the event of the sale of the company. The contract was signed by plaintiff and defendant William Finnegan, the sole shareholder of Network. In 2011, Network sold substantially all of its assets for six million dollars. Plaintiff alleges that he did not receive 5% of this purchase price ($300,000), as required by the contract. Plaintiff asserts a claim of breach of contract against Network Enterprises (Count I), and claims of breach of contract (Count II), tortious interference (Count III), and unjust enrichment (Count IV) against Finnegan.

---

[1] Network Piping changed its name to Network Enterprises in 2011.

Finally, plaintiff alleges that both defendants violated the Missouri Fraudulent Transfer Act (Count V).

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007), citing Swierkiewicz v. Sorema N.A., 534 U.S.506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570; see also id. at 562-63 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement."). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

## III. Choice of Law

Before discussing the legal sufficiency of the complaint, the Court must determine which state's law should apply.  A federal court sitting in diversity applies the choice-of-law approach of the forum state. E.g., Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1393 (8th Cir. 1997).  Missouri, the forum state,

recognizes and respects contractual choice-of-law provisions, Am. Inst. of Mktg. Sys., Inc.v. Brooks, 469 S.W.2d 932, 935 (Mo. Ct. App. 1971), such as the one in this case. That provision states: "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Rhode Island…" Pl. Ex. A [Doc. #4-1]. This clause reaches plaintiff's claims sounding in contract and tort, because the tort claims are all "closely related to the interpretation of the contract." Nw. Airlines, 111 F.3d at 1392 (applying contractual choice-of-law provision to claims of negligent performance, misrepresentation, and unjust enrichment).

Although there is no mention of the choice-of-law clause or Rhode Island law in the complaint, plaintiff cites to Rhode Island cases in his brief without contesting their application. Apparently plaintiff has abandoned his position that "Missouri Law applies to and controls the events and causes of action set forth in this Petition." Compl. ¶ 4 [Doc. #4]. The Court finds that Rhode Island law applies in this case.

IV. Discussion

A. Breach of Contract

Defendants argue that Finnegan was not a party to the contract, and therefore cannot be sued for its breach. Plaintiff argues that Finnegan signed the contract in his individual capacity, not his representative capacity, and therefore may be personally liable for a breach. Plaintiff also suggests that the Court pierce the corporate veil that shields Finnegan from liability on Network's contracts.

1. Personal Liability of a Corporate Agent

Plaintiff's assertion that Finnegan is personally liable for the breach of the employment agreement is based on Finnegan's signature on the contract. According to the complaint, the contract "does not disclose any principal/agent relationship

between Defendants Network Piping and Finnegan and Defendant Finnegan did not indicate that he was executing the Employment Agreement as an officer or director of Defendant Network Piping." Compl. ¶ 18 [Doc. #4]. Finnegan's signature appears without qualification or a clause specifying that the contract is signed in a representative, not an individual, capacity. Plaintiff states that he relied upon Finnegan's personal liability when signing the contract.

It is a well established principle of agency law that "[w]hile an agent working for a known principal is usually not personally liable for acts done within the scope of his authority, he may either expressly or impliedly incur such personal liability. If the agent has bound himself personally, he will be bound accordingly. His liability in such a case is not bound on his agency but upon his contractual obligations." C. C. Plumb Mixes, Inc. v. Stone, 272 A.2d 152, 154 (R.I. 1971). The manner in which the agent signed the contract is important, but not dispositive, in determining the agent's liability on a contract. See R.I. Res. Recovery Corp. v. Van Liew Trust Co., 2011 R.I. Super. LEXIS 70, at *17-19 (R.I. 2011). Not only did Finnegan not specify that he signed in a representative capacity, but there is no explanation of Finnegan's identity or role as an agent anywhere in the agreement. Plaintiff has alleged sufficient ambiguity as to whether Finnegan was a party to the contract for the theory of personal liability to survive the 12(b)(6) standard of plausibility. "Determining whether an agent has bound himself personally is a question of fact," and should be left for summary judgment. Pacheco v. Mass. Cas. Ins. Co., 610 A.2d 111, 113 (R.I. 1992).

2. Piercing the Corporate Veil

Next, plaintiff argues that the Court should hold Finnegan personally liable for Network's contracts by piercing the corporate veil. Piercing the corporate veil is a

drastic measure by which the corporate form is disregarded, and constituents of the corporation are no longer shielded by limited liability.  "[R]espect for the legitimacy of the corporate form and its protective shield of limited liability usually dissuades courts from using their remedial swords" to pierce the corporate veil unless there is "extreme provocation to do so."  Doe v. Gelineau, 732 A.2d 43, 44 (R.I. 1986).  Courts are especially hesitant to pierce the veil in suits based in contract rather than tort, since the party suing on a contract is more likely to have considered, *ex ante*, the undercapitalization and shoddy corporate structure of the other party.  See Miller v. Dixon Indus. Corp., 513 A.2d 597, 604 (R.I. 1986) (explaining that courts are less likely to ignore the corporate form in cases of contract rather than tort).

Rhode Island courts are most likely to pierce the veil when the corporation is a mere "alter ego" of the corporate constituent, and when the corporation is used as a tool to accomplish fraud.  E.g., U.S. v. Kayser-Roth Corp., Inc., 103 F.Supp.2d 74, 84 (D.R.I. 2000); Stanley Weiss Assocs., LLC v. Energy Mgmt Inc., No. Civ.A. 02-1794, 2004 WL 877540, at *6 (Sup. Ct. R.I. Apr. 7, 2004).  A corporation will be viewed as an "alter ego" when there is "a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist."  Id. (quoting Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc., 789 P.2d 24, 26 (Utah 1990)). Undercapitalization and disregard for corporate formalities, such as conducting shareholder and director meetings or the segregation of corporate and private assets, are frequent hallmarks of the alter ego corporation.  Kayser-Roth, 103 F.Supp.2d at 84.  Additional equitable grounds that support veil piercing include the use of the corporate form to "defeat public convenience, justify wrong, protect fraud or defend

crime." Id. (quoting R & B Elec. Co v. Amco Const. Co., 471 A.2d 1351, 1354 (R.I. 1984)).

Defendants argue that plaintiff recites the elements of veil piercing, couching legal conclusions as factual allegations. Certainly, "bare-boned allegations of undercapitalization and common control and/or management, standing alone, do not rise to the level of plausibility required to survive a 12(b)(6) motion." Wrist Worldwide Trading GMBH v. MV Auto Banner, No. 10-2326 (ES)(CLW), 2011 WL 5414307, at *5 (D.N.J. Nov. 4, 2011). See also Essex Ins. Co. v. Raymond Miles, No. 10-3598, 2010 WL 5069871, at * 3 (E.D. Pa. Dec. 3, 2010) (granting a motion to dismiss a complaint that "is merely a recitation of the legal elements required to pierce the corporate veil.").

Plaintiff has alleged that Finnegan is the sole shareholder of Network, and as such, controls the corporation. Defendants are correct in pointing out that plaintiff has not alluded to the complete disregard of corporate formalities that so often encourages courts to pierce the veil. Plaintiff does not allege that Finnegan used corporate funds for his personal expenses, or that Network was undercapitalized. However, plaintiff *does* allege that Finnegan sold the assets of Network and pocketed the proceeds, leaving plaintiff to sue the empty corporate shell. Whether this alleged manipulation of the corporate form and the surrounding circumstances rise to the level of fraud necessary to pierce the veil remains to be seen at a later stage of litigation. For now, the plaintiff has alleged sufficient facts to survive a motion to dismiss. Accordingly, defendants' motion to dismiss Count II will be denied.

**B. Tortious Interference with the Employment Agreement**

Under Rhode Island law, "to prevail on a claim of tortious interference with contractual relations, a claimant must show '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom.'" Ira Green, Inc. v. Military Sales & Serv. Co., No. 10-207-M, 2012 WL 2178984, at *1 (D.R.I. June 13, 2012) (quoting Tidewater Realty, LLC. v. Rhode Island, 942 A.2d 986, 993 (R.I. 2008)). Under the "stranger doctrine" followed by Rhode Island courts, a party to a contract may not be liable for tortious interference with that contract. URI Cogeneration Partners, LP v. Bd. of Governors for Higher Educ., 915 F.Supp. 1267, 1289 (D.R.I. 1996) ("…suits brought under Rhode Island law for tortious interference with contract can only be maintained against non-contractual third parties."). See also Shire Corp., Inc. v. R.I. Dep't of Transp., No. PB 09-5686, 2012 R.I. Super. LEXIS 32, at *91 (R.I. Super. Ct. Mar. 2, 2012). Without the stranger doctrine, all breaches of contracts also would be actionable as torts. See, e.g., Holloway v. Skinner, 898 S.W.2d 793, 795 (TX 1995) ("Were we to recognize the tortious interference claim when this identity of interest exists, any party who breaches a contract could be said to have induced his own breach and would therefore be liable for tortious interference."); Shire, 2012 R.I. Super. LEXIS 32, at *92-93 ("In most cases, interference with a contract to which the interferor is or is essentially a party really amounts to breach of contract, and a claim for tortious interference is not actionable.").

All strangers to a contract must be non-parties, but not all non-parties are strangers.[2] For example, third party beneficiaries or others with legitimate interest in the contract are neither parties nor strangers, and cannot be sued for tortious

---

[2] For this reason, the defendants' position that Finnegan was neither a party *nor* a stranger to the contract is not inherently contradictory, as plaintiff argues.

interference. See Shire, 2012 R.I. Super. LEXIS 32, at *95-96 (holding that the state agency signing the contract, the state agency involved in awarding the contract, and individual employees of those agencies were "sufficiently interwoven such that [they] are not third persons or outside parties.").

An agent of a contracting party is not a third party and stranger to the contract, *unless* the agent is acting outside the scope of his authority, acting maliciously, or acting in his own interests. Id. at *95; Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 275 (1st Cir. 1997). Rhode Island law recognizes a tortious interference claim against the agent of the contracting corporation when the agent did not act in the best interest of the corporation, or was acting "solely to advance his own personal interests." Ed Peters Jewelry, 124 F.3d at 275. In order for the personal interest exception to apply, there must be enough distinction and distance between the agent and the contracting party so that they may act in opposition to one another. See Robertson Stephens, Inc. v. Chubb Corp., 473 F.Supp.2d 265, 275-76 (D.R.I. 2007) (denying a motion to dismiss because complaint adequately alleged that defendant, agent of the contracting party, acted in its own personal interests *rather than* the interest of the contracting party). See also Jolicoeur Furniture Co., Inc. v. Baldelli, 653 A.2d 740, 752 (R.I. 1995) (holding that separate branches of government are "independent enough to act in opposition to one another in any number of ways" and therefore should be considered separate parties capable of interfering with each other's contracts).

Plaintiff argues that Finnegan falls under the "personal interest" exception to the stranger doctrine, because Finnegan personally benefitted when he received the $300,000 allegedly due to Bradbury, along with the rest of the proceeds from the sale

of Network's assets. However, Finnegan was the sole shareholder and controlled Network; he was so closely aligned with the corporation that it is impossible to say that his personal interests diverged from the interests of Network. See Schoellkoff v. Pledger, 778 S.W.2d 897, 903 (Ct. App. Tx. 1989) (holding that, as a matter of law, "individuals who own, control, and dominate a closely held corporation" cannot be liable for the tortious interference with corporate contracts because they possessed a "unity of interest" with the corporation and were "so closely aligned as to be one entity") (internal quotations omitted). Therefore, defendants' motion to dismiss plaintiff's claim of tortious interference (Count III) will be granted.

**C. Unjust Enrichment**

Defendants move to dismiss the claim of unjust enrichment on two grounds. First, defendants argue that because an express contract exists, a claim of unjust enrichment cannot stand. Next, defendants contend that plaintiff failed to sufficiently plead the elements of unjust enrichment.

"An unjust enrichment claim cannot be maintained where a contract governs the relationship between the parties." Roberts v. Fleet Bank (R.I.), 342 F.3d 260, 270 (3d. Cir. 2003) (applying Rhode Island law and citing Marshall Contractors v. Brown Univ., 692 A.2d 665, 669 n.3 (R.I. 1997)). The existence of an express contract is not in dispute, and whether plaintiff is owed $300,000 will be determined according to the terms of that contract. However, Finnegan's involvement and liability on that contract *is* disputed. Because Finnegan may or may not be a party to the contract, breach of contract and unjust enrichment claims may be maintained in the alternative. 18 KT.TV, LLC v. Entest Biomedical, Inc., No. 3:11CV244, 2011 WL 5374515, at * 6 (M.D.

Pa. Nov. 7, 2011) (explaining that, when the express contract is in dispute, a plaintiff may plead breach of contract and unjust enrichment in the alternative).

However, plaintiff does not adequately allege the elements of this claim.  The three elements comprising a prima facie claim of unjust enrichment are as follows: "(1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable  for a defendant to retain the benefit without paying the value thereof."  Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006).  Plaintiff alleges that Finnegan received the benefit of an extra $300,000 in sale proceeds from the buyers of Network's assets, and that it would be unjust to allow Finnegan to retain these funds because they are the product of Network's breach of contract.  Plaintiff does not allege that he conferred any benefit upon Finnegan for which equity requires restitution or compensation.  The $300,000 Finnegan received was from Network or its buyers, not from plaintiff. The pleadings attempt to squeeze the facts into the shape of an unjust enrichment claim, in a backdoor attempt to hold Finnegan liable on the contract without piercing the corporate veil.  The facts of this case, as pleaded, simply do not fit within the law of unjust enrichment.  Accordingly, plaintiff's claim of unjust enrichment (Count IV) will be dismissed.

### D. Missouri Fraudulent Transfer Act

As discussed above, Rhode Island law applies to all claims closely related to the breach of contract claim.  Therefore, plaintiff's claim based on the Missouri Fraudulent Transfer Act (Count V) will be dismissed.

### E.  Request to Amend Complaint

In the memorandum in opposition to the motion to dismiss, plaintiff asks that he be granted leave to file an amended complaint.  Plaintiff's request must be submitted in motion form with a copy of the proposed amended complaint attached. The Court will not otherwise consider his request.

**Accordingly,**

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss [Doc. #8] is **granted as to Counts III, IV and V** of the complaint.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss is **denied as to Count II** of the complaint.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of February, 2013.